THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RICHARD BROWN, Defendant-Appellant.

(No. 74-284; ▮▮▮▮▮▮▮)

Third District—September 30, 1975.

James Geis, of State Appellate Defender's Office, of Ottawa, for appellant.

Frank X. Yackley, State's Attorney, of Ottawa (F. Stewart Merdian, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE ALLOY delivered the opinion of the court:

Defendant Richard Brown pleaded guilty to a charge of delivery of less than 200 grams of a controlled substance (amphetamines) and the trial court sentenced him to a term of not less than 18 months nor more

than 5 years in the penitentiary. The trial court denied a request for probation.

Defendant in his appeal in this court asserts that the trial court abused its discretion in denying him probation and that we should reduce the sentence to probation or, alternatively, to the time served, or at least reduce the minimum sentence to the minimum sentence provided for by statute.

It appears from the record that the Illinois Bureau of Investigation introduced at the sentencing hearing evidence showing that Special Agent Barrett of the IBI, while doing undercover drug work, was asked by one Rhonda Sack if he wished to purchase a quantity of amphetamine capsules called "speed." When Barrett asked if he could buy a larger quantity such as 1,000 capsules, Sack told him she would have to contact her supplier, the defendant. The following evening, June 5, 1973, by arrangement, Barrett met the defendant at Sack's house and purchased the 1,000 capsules of amphetamines for $200. The capsules were taken to the crime laboratory in Joliet and were found to contain 52 grams by weight of amphetamines.

Brown was subsequently indicted by the grand jury on November 8, 1973. The sentencing hearing was held on July 29, 1974, following the plea of guilty by defendant. No discussion of a possible sentence was made during the plea negotiations. Brown at the time was 26 years old. He served in the Marines for 4 years and in the Reserves for 2 more years. His service included 13 months in Vietnam during which he was decorated. Defendant had no prior criminal record of any kind. He was born and raised in Oklahoma where his parents, now divorced, still live. He has four younger brothers and sisters living in Oklahoma and Colorado. It is not clear how long Brown lived in the La Salle-Peru area before the incident which is involved in this case, but he had been out of active service with the Marines for about 3 years in June of 1973.

At the sentencing hearing it was shown that Brown had voluntarily turned himself in to the police when he heard, in November 1973, of his indictment. It was also noted that 4 months later, in March 1974, he was hired by the Montgomery Ward Store at the shopping mall just north of Peru as a merchandising manager for the boys' department. The presentence reports filed by the chief probation officer found defendant "very cooperative" and asserted that all persons to whom the officer talked "spoke highly of him and left us with the impression that he is a person who can be trusted" as he has assumed responsibilities on their behalf and fulfilled the same with no trouble. Three letters were also introduced which were written on behalf of defendant Brown which described him as "very dependable and trustworthy," "immaculate,"

"honest and uses good judgment—prompt and courteous." The defendant's landlady also stated that defendant had helped her and her husband do a lot of remodeling and repair of their property. It was also shown that Brown had done a number of jobs for the president of the local Budget Rent-A-Car and had driven autos to Chicago and returned autos a number of times and that he was "very ambitious and honest."

Defendant in testifying on his own behalf stated that he had only sold drugs the one particular time and that he realized that, in retrospect, it was wrong, which was why he pleaded guilty. Defendant maintained he would never do such a thing again because he was now engaged to be married to a girl who had a 3-year-old son and that he could not bear to involve him in any such incident nor would he want to risk his job.

He testified that he got the amphetamines from a female friend who was passing by on her way from California to the east coast. He stated that Rhonda Sack found out about the pills and contacted him about selling them to Barrett. He admitted that he might have told Barrett that evening that he would go back to California and get more amphetamines and cocaine, as Barrett stated in his report, but defendant testified that he did not purchase any drugs on a subsequent trip to California. Defendant asserted that he did not use any drugs but marijuana which he smoked in Vietnam and for some time in the States, but that he gave it up several months before his arrest. The State's Attorney did not recommend a sentence and noted only that defendant "has always been forthright and direct and did not appear to conceal anything, and I think that is an important factor."

This Court has had occasion recently to examine the sentencing structure of the new Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, § 1001—1—1 *et seq.*) and in particular the status of probation under the Code (*People v. Meyer*, 30 Ill.App.3d 673, 332 N.E.2d 606 (3rd Dist. 1975); *People v. Marshall*, 30 Ill.App.3d 17, 331 N.E.2d 566 (3rd Dist. 1975)). We noted in those cases that probation is now denominated a sentence under the Code and the courts of review may well be empowered to reduce the sentence of imprisonment to one of probation under the authority of Supreme Court Rule 615(b)(4) (Ill. Rev. Stat. 1973, ch. 110A, § 615(b)(4)), which power did not exist prior to the Code (*People ex rel. Ward v. Moran* (1973), 54 Ill.2d 552, 301 N.E.2d 300). This new position has been adopted by the Fifth District Appellate Court in several cases beginning with *People v. Rednour* (5th Dist. 1974), 24 Ill.App.3d 1072, 1076-77, 322 N.E.2d 492.

We recognized, however, in both *Marshall* and *Meyer* that the appellate power to reduce sentences, however extensive, must always be used sparingly, and that the basic issue on review is always whether the trial

court abused its discretion in imposing the particular sentence. We observe that courts have often noted that we should modify a sentence on appeal with caution, and exercise the power to modify only in cases which clearly require such modification, since the trial judge is normally in a superior position to determine the appropriate sentence.

The trial court in the cause before us, in considering sentencing, did not find that there was anything in defendant's background, history or character, which would warrant the imposition of a term of imprisonment. The court specifically found that defendant did not need correctional treatment and that he displayed an "attitude of rehabilitation." The trial court, however, did consider the provisions of section 401 of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1973, ch. 56½, § 1411), in which the legislature set forth some of the possible "nature and circumstances" of narcotics crimes which it deemed most damaging to peaceful welfare of the people and most deserving of more severe penalties. Of the seven aggravating circumstances which were there listed, the trial court found two applicable to defendant's sale of amphetamines to agent Barrett: namely, that the quantity was unusually large and that it was a sale by a person without other visible means of supporting himself (§ 1411(2)(4)).

While we might question the court's reliance on these factors on the basis of the record before us, we do note that the drug sold (amphetamine) is not one of the more toxic substances controlled by the Act. It is also noted that while Brown did not have a permanent job at the time of the offense it appears that he was doing certain odd jobs for landlords or other businessmen and that a few months later he obtained a job of considerable responsibility at a Montgomery Ward retail store. The fact that Brown testified that he did not ever make any other drug sales and that such testimony was not disputed, minimizes the assertion that he had no other visible means of income.

Nevertheless, while we might have granted probation to Brown had we been sitting as trial judges, we cannot say, on the basis of the record, that the trial court clearly abused its discretion in denying probation. We do not see any basis, however, for the imposition of a higher than minimum sentence in this cause.

Accordingly, this cause is remanded to the La Salle County Circuit Court with directions to reduce the minimum sentence to one year in modification of the existing sentence in this cause.

Remanded with directions.

STOUDER, P. J., and STENGEL, J., concur.